# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| **TIM WAYNE DAVIS**,                )  | |
|                                )  | |
| **Plaintiff,**               )  | |
|                                )  | |
| v.                             )  | Case No. 6:11-CV-2542-RDP |
|                                )  | |
| **MICHAEL J. ASTRUE,**          )  | |
| **Commissioner of Social Security,** )  | |
|                                )  | |
| **Defendant.**              )  | |

## MEMORANDUM OF DECISION

Plaintiff Tim Wayne Davis brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision by the Administrative Law Judge ("ALJ") denying his claim for disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). After reviewing the record and the briefs submitted by the parties, the court finds that the decision of the ALJ is due to be affirmed.

**I.     Proceedings Below**

Plaintiff filed an application for disability and DIB on December 18, 2008 (R. 113-18), and an application for SSI on December 9, 2008 (Tr. 110-12), in which he alleged that disability began on November 27, 2002. (R. 142, 147).  Plaintiff's onset date of disability was later amended to September 1, 2006. (R. 204; Supp. R. 23).

Plaintiff's applications were denied by the Social Security Administration on March 2, 2009. (R. 59-68). Plaintiff filed a written request for a hearing on July 22, 2009. (R. 74). Plaintiff's request was granted on February 9, 2010, and a hearing was scheduled for May 11, 2010. (R. 77). On June 29, 2010, the ALJ delivered his decision denying

Plaintiff disability benefits. (R. 13-26). In his decision, the ALJ concluded that Plaintiff was not disabled under Sections 216(i), 223(d), or 1614(a)(3)(A) of the Act. (R. 26).

Plaintiff's alleged disability is primarily based on his suffering from mental problems that he states were caused by the death of his infant son in November 2002. (Supp. R. 7; R. 209, 212, 227). The earliest medical records for Plaintiff are from August 2003 at Baptist Health Center Graysville, where Plaintiff expressed to Dr. W.A. Keith his concerns about diabetes, lipomata on his arms and chest wall, mood swings, and irritability. (R. 227). Plaintiff had regular appointments with Dr. Keith until January 16, 2004. At that appointment, Plaintiff inquired whether his "lazy eye" would "get him on disability." Dr. Keith advised Plaintiff that he "needed to stay busy" and "check with an eye doctor about that." (R. 224). It was two years later, on April 7, 2006, that Plaintiff returned to see Dr. Keith with complaints of general malaise, fatigue, headaches, mood swings, and poor sleep. (R. 223). On September 19, 2006, Dr. Keith's office was contacted by Plaintiff's (then current) attorney informing them that Plaintiff had quit his job because he was having thoughts of injuring a co-worker by "chopping their fingers off with a clever." (R. 222). On October 16, 2006, Plaintiff was instructed by Dr. Keith to go to Western Mental Health for psychiatric help. (R. 221-22).

During a two-year hiatus from treatment at Baptist Health Center Graysville, Plaintiff sought treatment from Northwest Alabama Mental Health Center ("NAMHC") for his depression and anger problems. (R. 208-19). Plaintiff's first visit occurred on March 10, 2004, which was followed by regular visits until October 27, 2004. (R. 209, 212-17). On January 24, 2005, NAMHC closed Plaintiff's case due to Plaintiff's failure to follow his treatment program. (R. 211).

Dr. Wolfram Glaser of Western Mental Health Center, Inc. ("WMHC") saw Plaintiff on March 6, 2007 and described Plaintiff as a "generally pleasant gentleman, who seems a little impaired intellectually. He is a little dysphoric, but not severely depressed." (R. 261). Dr. Glaser prescribed Prozac to Plaintiff and saw him again on April 3, 2007, noting that Plaintiff stated he no longer had suicidal thoughts and did not seem to be excessively depressed at that time. (R. 259, 261). On May 9, 2007, Dr. Glaser listed mood disorder and behavior/conduct disorder as Plaintiff's problems, and assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 52.[1] (R. 253-54). On August 7, 2007, Dr. Glaser prescribed Zyprexa, and on January 30, 2008 added samples of Abilify to Plaintiff's list of prescriptions. (R. 245, 249). On May 2, 2008, Plaintiff was assigned a GAF score of 50. (R. 239). On October 14, 2008, Plaintiff reported that he was "doin[g] a lot better" and claimed that he had only had one outburst in the past several months. (R. 236). Plaintiff's next visit at WMHC was on January 12, 2009, after which Dr. Glaser opined that there was "little clinical change since [their] last contact." (R. 235).

Dr. John Neville conducted a psychological evaluation of Plaintiff on February 6, 2009. (R. 267). In his report Dr. Neville opined:

> [Plaintiff] is considered cognitively able to manage financial benefits. He is not emotionally capable of functioning independently at present. [Plaintiff] was able to understand instructions. Short-term memory was good. His ability to carry out instructions appeared moderately impaired.

---

[1]A GAF score ranging between 51 and 60 indicates moderate symptoms & impairments, including for example, occasional thoughts of suicide, occasionally verbally aggressive, moderate difficulty in social or occupational functioning (*e.g.*, few friends, occasional conflicts with family, peers or co-workers, occasionally problems at work). (R. 254)

> [Plaintiff]'s ability to respond appropriately to coworker's was considered moderately to severely impaired. His ability to cope with ordinary work pressures was considered moderately to severely impaired. [Plaintiff] seemed willing to accept supervision, although his history suggested that episodes of resistance to supervision would be likely.

(R. 269). Dr. Neville's diagnostic impression was that Plaintiff suffered from Major Depressive Disorder, Recurrent, Moderate and Intermittent Explosive Disorder, Provisional. (*Id.*).

On February 12, 2009, Dr. Simona Dunlap conducted a consultative examination of Plaintiff. (R. 272). Her assessment of Plaintiff was that he had major depression, low back pain, bilateral knee arthralgias, and left eye blindness. (R. 275). Dr. Dunlap also noted that with regard to Plaintiff's back, there was no spasm or deformity, and that his range of motion in all four extremities was normal except that mobilization of the knee was painful mostly on flexion above seventy-five (75) to eighty (80) degrees. (R. 274).

On February 13, 2009, Dr. Gloria Roque conducted a psychiatric review of Plaintiff and asserted that Plaintiff suffered from mild restriction of daily living activities, moderate difficulties in maintaining social function, and moderate difficulties in maintaining concentration, persistence or pace. (R. 277, 287). In her assessment, Dr. Roque concluded that Plaintiff's mental residual functional capacity was not significantly limited except that he was markedly limited in his ability to interact appropriately with the general public, and moderately limited in the following areas:

> the ability to understand and remember detailed instructions; the ability to carry out all detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to

>accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and the ability to respond appropriately to changes in the work setting.

(R. 291-92). Dr. Roque concluded her evaluation by assessing Plaintiff's functional capacity based on his limitations. (R. 293).

On February 27, 2009, Dr. Richard Whitney evaluated Plaintiff and opined that Plaintiff's statements about his physical symptoms and functional limitations are only partially credible. (R. 297).

Plaintiff returned to WMHC on May 4, 2009 and was assigned a GAF score of 47 by Dr. Glaser. (R. 301-02). On May 11, 2009, Plaintiff reported to Dr. Glaser that his increased dosages of prescription medication reduced his crying and improved his mood, and Dr. Glaser noted that gradual symptom reduction was seen. (R. 307). Plaintiff's last recorded visit at WMHC occurred on October 5, 2009, and Dr. Glaser asserted that there was little change in Plaintiff's condition. (R. 306).

## II.   ALJ Decision

For an individual to be determined disabled as defined under the Social Security Act, the claimant must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 20 C.F.R. § 416.905. The Social Security Administration has established a five-step process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a). These steps are followed in order, and

if it is determined that the claimant is or is not disabled at any step of the evaluation process, the evaluation will not proceed to the next step.

The first step provides that if the claimant is working, and that work qualifies as substantial gainful activity, then he cannot claim disability regardless of medical condition, age, education, or work experience. 20 C.F.R. § 416.920(b). "Substantial gainful activity" is work activity that is usually done for pay or profit and involves doing significant mental or physical activities. 20 C.F.R. § 416.974.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that is "severe." 20 C.F.R. § 416.920(c). An impairment or combination of impairments is "severe" if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 416.921. Third, if the ALJ determines that the claimant's impairment meets or equals an impairment or combination of impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, then the claimant will be found disabled. 20 C.F.R. § 416.920(d).

Before proceeding to the fourth step, the ALJ must assess the claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence contained in the record. 20 C.F.R. § 416.920(e). An individual's RFC is their ability to do physical and mental work activities on a sustained basis despite limitations from impairment. 20 C.F.R. § 416.945. At step four, the ALJ must determine whether the claimant is capable of performing past relevant work based on the claimant's RFC. 20 C.F.R. § 416.920(f). If the claimant's RFC allows for him to do past relevant work, then he is not disabled.

At the fifth and final step, the ALJ must determine whether the claimant is capable of making an adjustment to any other kind of work given his RFC, age, education, and work experience. 20 C.F.R. 416.920(g). If the claimant is able to do other work then he is not disabled.

Here, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2009. (R. 15). At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since November 27, 2002.[2] (*Id.*). The ALJ then determined that Plaintiff's low back pain, affective mood disorder, and conduct disorder were all severe impairments that were supported by medically acceptable evidence and that those impairments caused Plaintiff more than a minimal functional limitation on his ability to perform basic work activities. (*Id.*). The ALJ declined to include diabetes mellitus or left eye blindness (despite Plaintiff's allegations to the contrary) because he found that there was no objective medical evidence indicating that Plaintiff was ever diagnosed with diabetes, and there was no evidence that his left eye blindness ever caused him any limitations with respect to his activities of daily living or in his employment. (R. 16).

At step three, the ALJ determined first that Plaintiff's back pain does not meet listing 1.04. (*Id.*). The ALJ found that Plaintiff's mental impairments, considered singly or in combination, did not meet or medically equal listing 12.04 criteria because they did not result in at least two of the following: marked restriction of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining

---

[2] This was the initial alleged onset date, before Plaintiff amended the onset date to September 1, 2006.

concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (*Id.*). Thus, Plaintiff was not found to be disabled at step three of the analysis.

Before proceeding to step four, the ALJ determined that Plaintiff's RFC was as follows:

> [Plaintiff] has the [RFC] to perform simple, but not complex tasks; can maintain attention and concentration for two hours at a time and complete an eight hour day provided all customary breaks are given; contact with coworkers should be casual, with a work setting that is well spaced, with his own work area without close proximity to other employees; could tolerate ordinary work pressures, but not excessive work loads, quick decision making, rapid changes, or multiple demands upon him; supervision should be non-confrontational and tactful; changes to the workplace should be gradual, well-explained and infrequent; has mild to moderate difficulties getting along with coworkers or supervisors; and would miss not more than two days of work per month.

(R. 18). The ALJ acknowledged that Plaintiff's medically determined impairments could reasonably be expected to cause the symptoms he alleged, but found that Plaintiff's statements concerning the intensity, persistence and limiting effects of the alleged symptoms were not credible to the extent they are inconsistent with his RFC determination. (R. 19).

In making that credibility determination, the ALJ noted that Plaintiff's ability to take care of himself and others was inconsistent with his allegation of disability based on mental and physical impairments. (R. 24). Additionally, the ALJ pointed to Plaintiff's testimony during the hearing that he had never hurt anyone, and the record indicates that Plaintiff was noncompliant with his medication regimen, which abates his symptoms when he takes it. (*Id.*). Furthermore, the ALJ cited the inconsistencies within Plaintiff's reported duration of his mental health problems, as Plaintiff claimed that he has had

mental problems all of his life, yet he also alleges that his problems were caused by his infant son's death in November 2002 (despite having continued to work for nearly four years until September 2006). (*Id.*). Summing up his analysis, the ALJ concluded that "[Plaintiff] simply alleges a greater degree of debilitation than what objective evidence can support." (*Id.*).

Next the ALJ addressed the weight accorded to the various doctors' opinions concerning Plaintiff. The ALJ explained that the opinions of Dr. Roque and Dr. Whitney were afforded substantial weight (despite the fact that neither doctor examined Plaintiff), because they provided specific reasons indicating their opinions were based on the evidence of record, and their opinions were internally consistent, as well as consistent with the evidence as a whole. (R. 24). The ALJ then stated that Dr. Dunlap's findings were afforded substantial weight because they were based on direct observation and examination of Plaintiff, as she was Plaintiff's examining doctor. (R. 25). Also, the ALJ noted that Dr. Neville's findings were only given some weight because, although they were based upon direct observation and examination, the records from Plaintiff's treating mental health provider provided a better longitudinal picture of Plaintiff's mental health. (*Id.*).

At step four, the ALJ examined whether Plaintiff was capable of performing past relevant work. The ALJ noted that Plaintiff had worked as a floor cleaner within the last 15 years, and did so for a sufficient period of time to learn the duties of the job. (*Id.*). During the hearing, a vocational expert, Julia Russell, testified that an individual with Plaintiff's age, education, work experience, and RFC would be able to work as a floor cleaner. (*Id.*). Thus, the ALJ found that Plaintiff was not disabled and denied his

applications.

### III. Plaintiff's Argument for Reversal

Plaintiff alleges that there are three errors in the ALJ's decision. First, Plaintiff contends that the ALJ made an incorrect finding at step two, both because the ALJ failed to note the correct impairments diagnosed by a DDS consultive examiner, and also because he refused to find that Plaintiff's blindness in the left eye was a severe impairment. (Pl.'s Mem. 8). Next, Plaintiff argues that the ALJ committed the most significant errors in his evaluation of Plaintiff's mental health treatment and mental health diagnosis. (Pl.'s Mem. 9). Plaintiff contends that the ALJ failed to accord appropriate weight and consideration to the various medical opinions submitted for his consideration, and that he failed to make clear what weight he accorded to each item of evidence, or give a reason for making such a decision. (Pl.'s Mem. 10-11). Third, Plaintiff submits that the ALJ erred by improperly citing occasions of noncompliance to support his finding that Plaintiff was not disabled. (Pl.'s Mem. 11-12).

### IV. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead,

it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

V.   **Discussion**

   a.   **The ALJ Did Not Err at Step Two of the Disability Evaluation.**

Plaintiff argues that he suffers from other severe impairments that were not listed at step two of the ALJ's decision. (Pl.'s Mem. 8). Specifically, Plaintiff claims that he has been diagnosed with degenerative changes in lumbar spine, a variety of psychiatric issues other than affective mood disorder or conduct disorder, and left eye blindness. As Plaintiff correctly notes, "[a]n impairment can only be considered non-severe if it is a slight abnormality which has such a minimal effect on the claimant that it would not be expected to interfere with the claimant's ability to work irrespective of age, education, or prior work experience." (Pl.'s Mem. 9; *Stratton v. Bowen*, 827 F.2d 1447, 1453 (11th Cir. 1987)). However, this analysis would only be applicable if the ALJ had dismissed Plaintiff's claim at step two. The Eleventh Circuit has clearly indicated, "[n]othing

11

requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," so long as the ALJ considers a claimant's impairments in combination at step three in the analysis. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Additionally, "[e]ven if the ALJ erred in not indicating whether [a condition] was a severe impairment, the error was harmless because the ALJ concluded that [the claimant] had a severe impairment and that finding is all that step two requires." *Id.* at 824-25.

Here, the ALJ stated at step two that Plaintiff suffered from low back pain, affective mood disorder, and conduct disorder, all of which are severe impairments. Plaintiff's argument – that the ALJ's exclusion of his other symptoms from the list of severe impairments constitutes reversible error – misses the mark. As long as the ALJ considered Plaintiff's impairments in combination at step three of the analysis, then it is unnecessary to identify all of the impairments that may be individually considered severe. The record indicates that at step three of the analysis the ALJ considered Plaintiff's lower back symptoms and mental impairments singly and in combination. (R. 16-18). Also, the ALJ's decision not to classify Plaintiff's left eye blindness as a severe impairment is supported by the fact that Plaintiff has not offered any evidence that this condition causes him any limitations. To the contrary, Plaintiff had a very good work history up until 2006, and has gone his entire life without vision in his left eye. Thus, the ALJ did not err in any way at step two of the disability evaluation, as he indicated that Plaintiff did in fact suffer from some severe impairments.

> b.  **The ALJ Did Not Err in His Evaluation of Plaintiff's Mental Health Treatment and Diagnosis.**

Plaintiff next asserts that the most significant errors committed by the ALJ related to his mental health treatment and mental health diagnosis. (Pl.'s Mem. 9). Specifically, Plaintiff submits that the ALJ erred by failing to consider his GAF score assigned by his treating psychiatrist, Dr. Glaser, and failing to properly consider the opinion of the DDS consultative psychologist, Dr. Neville.

Plaintiff fails to cite any authority showing how a GAF score could establish disability. In fact, courts in this Circuit have noted that a GAF score "is not an assessment of a claimant's ability to work, but a global reference scale to *aid* in the treatment of an ongoing condition." *Anderson v. Astrue*, No. 2:08CV917-CSC, 2010 WL 1052845, at *7 n.5 (M.D. Ala. Mar. 23, 2010) (emphasis added) (citing *Jiles v. Comm'r of Soc. Sec.*, No. Civ. A. 05-G-0861-S, 2006 WL 4402937, at *2 n.1 (N.D. Ala. Sept. 11, 2006)). The Eleventh Circuit has also spoken to this issue (albeit in an unpublished decision), noting that "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have 'no direct correlation to the severity requirements of the mental disorders listings.'" *Wind v. Barnhart*, No. 04-16371, 2005 WL 1317040, at *6 n.5 (11th Cir. June 2, 2005); *see also*, 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000). Given the lack of any authority requiring an ALJ to consider a GAF score to make a disability determination, the court finds that the ALJ was not required to discuss or assign any weight to Dr. Glaser's GAF assessment of Plaintiff.

Plaintiff also argues that the ALJ failed to adhere to Eleventh Circuit law that places a duty on an ALJ to make clear the weight accorded to various testimony and the reasons for the decision. (Pl.'s Mem. 11); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). The particular part of the ALJ decision that Plaintiff takes issue with reads as follows:

> While Dr. Neville's findings are based upon direct observation and examination of [Plaintiff], the records from [Plaintiff]'s treating mental health provider provides a better longitudinal picture of [Plaintiff]'s mental health. Therefore, Dr. Neville's findings have only been given some weight. The findings of Simona Dunlap, the examining doctor . . . are given substantial weight. These findings are based upon direct observation and examination of [Plaintiff].

(R. 25). Plaintiff's argument – that this is an insufficient showing of the weight accorded to the doctors' opinions' rationale for doing so – is without merit. First, the ALJ clearly annunciated what weight was given to the two doctors' testimony: Dr. Neville's opinion was only given some weight; Dr. Dunlap's opinion was given substantial weight. The ALJ also provided a clear explanation of his rationale for the weight he attributed to both opinions. Dr. Dunlap's opinion was given substantial weight because it was based on direct observation and examination of Plaintiff. Dr. Neville's opinion was afforded only some weight (despite the fact that it also was based on direct observation and examination), because records from Plaintiff's treating mental health provider provided a better picture of Plaintiff's mental health. Thus, the ALJ properly considered the findings reported by Dr. Neville and Dr. Dunlap in accordance with the law of this circuit.

    **c.    The ALJ Did Not Improperly Rely on Plaintiff's Noncompliance With Treatment to Find Plaintiff Not Disabled.**

Plaintiff's contention that the ALJ erred by relying upon his noncompliance in

finding him to not be disabled is also without merit. Plaintiff cites authority from the Sixth and Ninth Circuits which provide that a claimant's failure to seek treatment for a mental impairment may be caused by the impairment itself, and thus is not an appropriate ground on which to reject a disability claim. (Pl's Mem. 12). These authorities have little relevance, however, as here Plaintiff repeatedly sought treatment, but failed to comply with the treatment plans prescribed to him.

Plaintiff also argues that a claimant's failure to follow a recommended treatment might be a symptom of a mental impairment itself. *Bennett v. Barnhart*, 288 F. Supp. 2d 1246, 1251 (N.D. Ala. 2003). However, neither Plaintiff nor any of his physicians have ever indicated that Plaintiff failed to comply with a recommended treatment because of his impaired mental state. In fact, Plaintiff reported that he did not follow prescribed treatment plans on some occasions due to a lack of finances (R. 212, 216); and on other occasions, he explained his noncompliance with treatment was a result of being busy at his house (R. 235, 243). The ALJ did not rely solely on Plaintiff's noncompliance to deny this claim. Rather, the ALJ merely noted Plaintiff's noncompliance as further evidence undermining the credibility of Plaintiff's alleged disability, and this is a finding permitted by administrative regulations, SSR 96-7p, and Eleventh Circuit case law. (R. 24); *see* 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c); SSR 96-7p; *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). The ALJ did not significantly rely on Plaintiff's noncompliance in making his decision; therefore, this part of Plaintiff's argument fails.

### VI.   Conclusion

The ALJ properly denied Plaintiff's claim for disability. The ALJ's findings are supported by substantial evidence and he applied the law correctly in denying Plaintiff's

claim. Thus, the judgment of the ALJ is due to be affirmed.

**DONE** and **ORDERED** this    17th    day of September, 2012.

                                              **R. DAVID PROCTOR**
                                              UNITED STATES DISTRICT JUDGE